**LOKER LAW, APC**
Matthew M. Loker, Esq. (279939)
matt.loker@loker.law
Nicholas J. Enns, Esq. (356855)
nick.enns@loker.law
132 Bridge Street
Arroyo Grande, CA 93420
Telephone: (805) 994-0177

*Attorneys for Plaintiff,*
Ken Kay

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**KEN KAY,**

Plaintiff,

**v.**

**WELLS FARGO BANK, N.A.,**

Defendant.

**Case No.:**

**COMPLAINT FOR DAMAGES FOR VIOLATIONS OF:**

**I. ELECTRONIC FUNDS TRANSFER ACT; AND,**

**II. CALIFORNIA'S ELDER ABUSE AND DEPENDENT ADULT CIVIL PROTECTION ACT**

**JURY TRIAL DEMANDED**

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

## INTRODUCTION

1. The stated purpose of the Electronic Fund Transfers Act, 15 U.S.C. § 1693, et seq. ("EFTA"), is to "provide a basic framework establishing the rights, liability, and responsibilities of participants in electronic fund transfer systems." 15 U.S.C. § 1693(b). EFTA's "primary objection…is the provision of individual consumer rights." *Id.* Moreover, the language of EFTA indicates that the consumer protection measures contemplated by it are aimed at promoting disclosure, preventing fraud, and allocating liability. *Id.*, at 1693d-1.
2. Understanding that the elderly community is a highly vulnerable class, in 1982 the California Legislature enacted the Elder and Dependent Adult Civil Protection Act ("EDACPA") set forth in Welfare & Institutions Code §§ 15600, et seq. As such elderly individuals have heightened rights and special statutory protections not afforded to other members of the general public. In 2008, the California Legislature made a material change to the EDACPA, which broadened the statute dramatically so that any person that "knew or should have known that [its] conduct is likely to be harmful to the elder" could be held civilly liable under the EDACPA. *Das v. Bank of Am., N.A.*, 186 Cal. App. 4th 727, 736-37, 112 Cal. Rptr. 3d 439, 447 (2010).
3. KEN KAY ("Plaintiff"), by Plaintiff's attorneys, brings this action to challenge the actions of WELLS FARGO BANK, N.A. ("Defendant") with regard to unauthorized electronic funds transfers.
4. Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to Plaintiff, or to Plaintiff's counsel, which Plaintiff alleges on personal knowledge.
5. While many violations are described below with specificity, this Complaint alleges violations of the statute cited in its entirety.

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

6. Unless otherwise stated, all the conduct engaged in by Defendant took place in California.

7. Any violations by each Defendant were knowing, willful, and intentional, and Defendant did not maintain procedures reasonably adapted to avoid any such violation.

8. Unless otherwise indicated, the use of a Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Defendant's named.

## JURISDICTION AND VENUE

9. Jurisdiction of this Court arises pursuant to federal question jurisdiction under 28 U.S.C. § 1331. More particularly, this action arises out of Defendant's violations of the Electronic Fund Transfers Act, 15 U.S.C. § 1693, et seq. ("EFTA"). Additionally, jurisdiction of this Court for supplemental state claims arises pursuant to 28 U.S.C. § 1367.

10. Because Defendant conducts business within the State of California, personal jurisdiction is established.

11. Venue is proper pursuant to 28 U.S.C. § 1391 for the following reasons: (i) Plaintiff resides in Orange County in this judicial district; (ii) the conduct complained of herein occurred within this judicial district; and (iii) Defendant conducted business within this judicial district at all times relevant.

## PARTIES

12. Plaintiff is a natural person over 65 years old who resides in Orange County, State of California, and is a "person" as defined by Regulation E in 12 C.F.R. 1005.2(j).

13. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. 1693a(6).

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

14. Defendant is a National Banking corporation headquartered in the State of South Dakota.
15. Defendant is a "financial institution" as defined by 15 U.S.C. 1693a(9).
16. Defendant routinely engages in the practice of electronic fund transfers as defined by 15 U.S.C 1693a(7).
17. Defendant is a corporation doing business in the County of Orange, State of California, and is a "person" as defined by Regulation E in 12 C.F.R. 1005.2(j).

**FACTUAL ALLEGATIONS**

18. At all times relevant, Plaintiff is an individual residing within the State of California.
19. Plaintiff maintained a deposit account with Defendant that constitutes an "account" as defined by 15 U.S.C. § 1693a(2) and 12 C.F.R. 1005.2(b)(1).
20. On February 17, 2026, at approximately 10:00AM, Plaintiff visited an ATM operated by Defendant in Irvine, CA. Plaintiff used the ATM to withdraw $300 which he planned to take to the The Gardens Casino to play cards.
21. While Plaintiff was completing his withdrawal, a man at the ATM next to Plaintiff held out a $20 bill and told Plaintiff he dropped the $20. Plaintiff turned to accept the $20, thanked the man, and then retrieved what he thought was his debit card from the ATM machine.
22. Plaintiff then walked to a nearby doughnut store then drove to The Gardens Casino in Hawaiian Gardens, CA. To enter The Gardens Casino, Plaintiff was required to scan his Driver License to gain entry.
23. Shortly after 11:00AM, while still at The Gardens Casino, Plaintiff decided to check his account balance. Plaintiff discovered that his account balance had dropped by $3,600.

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

24. In the time it took Plaintiff to check his accounts on his phone with Defendant, Plaintiff's Account Summary also then showed an "In Branch Withdrawal" for $4,850 at Defendant's Branch in Inglewood, CA that processed at 11:02AM.
25. Plaintiff's location at the time of the fraudulent withdrawal can be easily verified by the camera footage placing him at The Gardens Casino during this time.
26. Alarmed by all this fraudulent activity within Plaintiff's accounts with Defendant that Plaintiff did not approve or authorize, Plaintiff checked what he thought was his debt card in his wallet, only to discover the debit card he had pulled out of the ATM machine was not his card and was instead a card for someone with the first name "Steven."
27. Upon discovering the fraudulent withdrawals and the debit card that was not his, Plaintiff immediately called Defendant to dispute the unauthorized withdrawals.
28. At around 2:00PM on that same day, Plaintiff went back to Defendant's branch where he had used the ATM to dispute the withdrawals in person. Plaintiff explained what had happened to the teller. The teller acknowledged that the type of fraud Plaintiff has experienced was becoming more typical and that this was not the first time the teller had heard of this set of fraudulent circumstances.
29. Plaintiff also explained that he had been at The Gardens Casino in Hawaiian Gardens, CA when the Inglewood, CA withdrawal had occurred. The teller then exchanged the debit card for a person named Steven with a new debit card with Plaintiff's name and proper account information.

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

30. The teller informed Plaintiff that he had likely been the victim of a common fraud scheme that had been happening lately in that area explaining that when Plaintiff turned to accept the $20 from the man that the man likely had a partner standing in line behind Plaintiff who then swapped his debit card that was in the ATM machine with another card, proceeding to use his card for the subsequent fraudulent withdrawals.

31. On February 18, 2026, Plaintiff filed Police Report No. 26-1936 with the Irvine Police Department.

32. After receiving the report from Plaintiff, Officer Alexander Ghilarducci ("Officer Ghilarducci") drove to Defendant's branch where the debit card theft occurred and interviewed Defendant's Branch Manager, Maziar Jafari ("Jafari"). Jafari explained that he could not provide Officer Ghilarducci with the debit card Plaintiff had turned into the teller hours earlier, nor could they provide surveillance footage as providing both to Officer Ghilarducci were against company policy. Officer Ghilarducci was directed to call a Legal Corporate Security representative.

33. Officer Ghilarducci called Charlie Duncan ("Duncan"), one of Defendant's Legal Corporate Security representatives, and Duncan explained he was unable to provide the footage without a warrant due to Defendant's company policy. Officer Ghilarducci explained that providing the footage promptly would likely result in arrests and potentially prevent further similar thefts.

34. Duncan explained he could provide the footage if he reimbursed Plaintiff for the fraudulent withdrawals, turning Defendant into the victim of the crime, as the company policy would allow for release of surveillance footage in that scenario.

35. Duncan collected Officer Ghilarducci's contact information and stated that Ducan would email Officer Ghilarducci the surveillance footage as soon as Duncan was able. Officer Ghilarducci entered his police report on February 18, 2026 at 11:55AM stating that Officer Ghilarducci would supplement his police report when the surveillance footage had been provided. Plaintiff obtained a copy of the police report on March 3, 2026 and there was no supplement attached to the report at that time, indicating that no surveillance footage had yet to be provided to the Irvine Police Department.

36. On February 19, 2026, Plaintiff was shocked to receive a letter from Defendant stating that they would be denying his dispute for the unauthorized withdrawals.

37. Again feeling deflated, on February 24, 2026, Plaintiff received another letter from Defendant stating that they had completed their investigation and would be holding Plaintiff responsible for the unauthorized withdrawals.

38. As of the drafting of this Complaint, Defendant has continued to hold Plaintiff responsible for the unauthorized withdrawals.

39. Plaintiff submitted his dispute to Defendant in less than 60 days from receipt when he discovered the unauthorized transactions.

40. Defendant's investigation was unreasonable.

41. Defendant failed to review and consider Plaintiff's immediate and unequivocal denial that he authorized any of the disputed electronic fund transfers, despite Plaintiff notifying Defendant approximately one hour after Plaintiff discovered the unauthorized withdrawals.

42. Defendant failed to review and consider the volume, timing, and velocity of the disputed transactions, including that multiple high-dollar withdrawals were initiated in rapid succession on a single day.

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

43. Defendant failed to review and consider that the aggregate amount of the transfers, $8,450, represented an extraordinary and atypical depletion of Plaintiff's account.

44. Defendant failed to review and consider that the sudden initiation of multiple outgoing ATM withdrawals was wholly inconsistent with Plaintiff's established account usage and transaction history.

45. It was unreasonable for Defendant not to immediately review the security footage as part of its investigation. Defendant possessed the ability, resources, and obligation to utilize the footage Defendant readily had at its disposal. Instead of taking this basic investigative step, Defendant made no meaningful effort to coordinate with Plaintiff or the Irvine Police Department. Defendant's refusal to review the security footage was not an investigative judgment, but a failure to investigate at all, rendering Defendant's investigation superficial, perfunctory, and unreasonable under the Electronic Funds Transfer Act.

46. More specifically, Defendant should have discovered from its own records, including Plaintiff's dispute, that the transaction at issue was unauthorized and fraudulent and that at least one of the transaction was impossible for Plaintiff to have made as he was not in Inglewood, CA at the time of the withdrawal.

47. Defendant did not have a reasonable basis for believing that Plaintiff's account was not in error.

48. Defendant knowingly and willfully concluded that Plaintiff's account was not in error when such conclusion could not reasonably have been drawn from the evidence available to Defendant at the time of its investigation.

49. Through this conduct, Defendant violated 15 U.S.C. § 1693f.

50. Through this conduct, Defendant violated 15 U.S.C. § 1693g.

51. Defendant affirmatively identified the disputed transactions as suspicious and fraudulent when Defendant's teller exchanged Plaintiff's compromised debit card with a new debit card, confirming that Defendant recognized the transactions as unauthorized or, at minimum, highly indicative of criminal fraud. At that point, Defendant possessed actual knowledge that Plaintiff's funds were being wrongfully taken from his account. This same actual knowledge was also present when Officer Ghilarducci spoke with Jafari and Duncan attempting to investigate the crime against Plaintiff.

52. The abovementioned transaction was an unauthorized electronic fund transfer as defined by 15 U.S.C. § 1693a(12); and, 12 C.F.R. 1005.2(m).

53. Despite possessing actual knowledge of the fraud, Defendant processed the disputed withdrawals and allowed Plaintiff's money to be stolen. Defendant failed to timely halt the payments, failed to reverse the transactions, and failed to take reasonable steps to prevent the dissipation of Plaintiff's funds. Defendant's decision to proceed with processing the transfers was not the result of oversight, but a conscious choice made in the face of known fraud risk.

54. After Plaintiff's funds were taken, Defendant refused to return or credit the stolen amounts, notwithstanding its statutory obligation to do so under the Electronic Funds Transfer Act. Defendant's refusal to reimburse Plaintiff was deliberate and ongoing, even after Plaintiff disputed the transactions, cooperated with the investigation, and provided additional information confirming that the transfers were unauthorized.

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

55. By refusing to refund the stolen funds, Defendant wrongfully obtained and retained Plaintiff's personal property. Defendant knew or should have known that retaining fraudulently taken funds belonging to an elderly consumer was likely to cause substantial financial harm, emotional distress, and insecurity. Defendant's conduct deprived Plaintiff of money to which he had a clear legal and statutory right and exposed him to precisely the type of harm the Elder and Dependent Adult Civil Protection Act was enacted to prevent.

56. Defendant's conduct constituted more than a mere failure to reimburse; it amounted to the taking, obtaining, and retention of an elder's property for a wrongful use. Defendant acted with knowledge that its conduct was likely to be harmful and in conscious disregard of Plaintiff's rights and statutory protections as an elder. Through this course of conduct, Defendant committed financial elder abuse in violation of Welfare & Institutions Code § 15610.30.

57. To date, Defendant continues to hold Plaintiff responsible for the fraudulent transaction.

58. Since Plaintiff's efforts to be absolved of the unauthorized fraudulent transaction was unsuccessful, Plaintiff was required to bring this action to finally resolve Plaintiff's dispute.

## CAUSES OF ACTION CLAIMED BY PLAINTIFF

## COUNT I

## VIOLATION OF THE ELECTRONIC FUNDS TRANSFER ACT

## 15 U.S.C. §§ 1693, ET SEQ. (EFTA)

59. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

60. The foregoing acts and omissions constitute numerous and multiple violations of EFTA.

61. As a result of each and every violation of EFTA, Plaintiff is entitled to any actual damages pursuant to 15 U.S.C. § 1693m(a)(1); statutory damages pursuant to 15 U.S.C. § 1693m(a)(2)(A); and, reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1693m(a)(3).

**COUNT II**

**ELDER AND DEPENDENT ADULT CIVIL PROTECTION ACT**

**WELFARE & INSTITUTIONS CODE §§ 15600, ET SEQ.**

62. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

63. Plaintiff is the age of 65 or older, and thus "elder" within the meaning of Welfare & Institutions Code §15610.27.

64. Under Welfare & Institutions Code §15610.30(a), financial abuse of an elder occurs when an entity either directly or assists in the taking, secreting, appropriating, obtaining, or retaining of the real or personal property of an elder or dependent adult for a wrongful use.

65. Welfare & Institutions Code §15610.30(b) clarifies that a wrongful use is broadly defined to include whenever an entity knew or should have known that its conduct is likely to be harmful to the elder.

66. Welfare & Institutions Code §15610.30(c) clarifies that a person or entity takes, secretes, appropriates, obtains, or retains real or personal property when an elder or dependent adult is deprived of any property right.

67. Here, as described above, Plaintiff was entitled to a refund of the stolen funds under EFTA. However, Defendant refused to reimburse Plaintiff in the amount of the stolen funds, which he had a legal right to receive.

68. By refusing to reimburse him for this $8,450, Defendant directly violated Welfare & Institutions Code §15610.30(a)(1) by retaining funds of an elder that it knew or should have known would cause the elder harm.

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

69. Defendant's conduct was the proximate and foreseeable cause of substantial harm to Plaintiff, and Plaintiff has suffered, and continues to suffer and incur special and general damages.

70. Based on the above, Plaintiff alleges that Defendant is guilty of recklessness, oppression, fraud, or malice through its actions.

71. Defendant's conduct was a substantial factor in causing the foregoing harm which Plaintiff has suffered and continues to suffer.

72. Further, as a direct and proximate result of Defendant's misconduct, and Defendant's failure to refund or credit the lost funds, Plaintiff has incurred and will continue to incur attorneys' fees and litigation expenses in an amount to be proven at trial. Plaintiff therefore seek to recover any and all remedies permitted by the Civil Code and Welfare & Institutions Code, including attorneys' fees and expenses pursuant to Welfare & Institutions Code § 15657.5.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays that judgment be entered against Defendant for:

- An award of actual damages pursuant to 15 U.S.C. § 1693m(a)(1) for Plaintiff;
- An award of statutory damages of no less than $100 nor greater than $1,000 pursuant to 15 U.S.C. § 1693m(a)(2)(A) for Plaintiff;
- An award of costs of litigation and reasonable attorneys' fees pursuant to 15 U.S.C. § 1693m(a)(3);
- Actual damages, reasonable attorneys' fees and costs, and punitive damages under Welfare & Institutions Code § 15657.5
- Treble damages under Cal. Civ. Code § 3345;
- Punitive damages under Cal. Civ. Code § 3294;
- Any and all other relief the Court deems just and proper.

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

**TRIAL BY JURY**

Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Dated: March 13, 2026 Respectfully submitted,

**LOKER LAW, APC**

By: ___/s/ NICHOLAS J. ENNS___
NICHOLAS J. ENNS, ESQ.
ATTORNEY FOR PLAINTIFF

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420